ADRIANNE ALLEN, et al.,                    :

                  **OPINION AND ORDER**

          Plaintiffs,         :       03 Civ. 2829 (KMW) (GWG)

         -v.-                          :

CITY OF NEW YORK, et al.,               :

          Defendants.      :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

APPEARANCES OF COUNSEL:

Daniel M. Perez
Kuby & Perez
New York, NY
Attorney for Plaintiffs

Mark Zuckerman
Pamela Lynn Mahon
Office of Corporation Counsel
New York, NY
Attorney for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADRIANNE ALLEN, et al.,                              :
                                                                                  **OPINION AND ORDER**
                         Plaintiffs,                         :    03 Civ. 2829 (KMW) (GWG)

                 -v.-                                                :

CITY OF NEW YORK, et al.,                            :

                         Defendants.                     :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

  Plaintiffs brought this action against the City of New York and individual defendants alleging false arrest, excessive detention, and other claims arising out of their arrests in February 2002 at the World Economic Forum. Recently, defendants moved for summary judgment. In their responsive papers, plaintiffs included documents that were made available to them pursuant to a confidentiality order. Plaintiffs now move to file their summary judgment papers publicly. For the reasons stated below, plaintiffs' motion is granted.

I. BACKGROUND

  To understand the instant motion, some background is necessary, beginning with how the documents at issue became subject to a confidentiality order.

  A. The November 2004 Motion

  During the course of discovery in this case, plaintiffs sought certain documents from the City that the City had withheld based on various privileges. In a letter to the Court dated November 11, 2004, the plaintiffs challenged the City's assertion of privilege. See Order, dated Nov. 12, 2004 (Docket #67). Accordingly, the Court directed the City to move for a protective order with respect to the documents. Id. The City did so in November 2004. See Notice of

Motion for a Protective Order, dated Nov. 22, 2004 (Docket #69) ("November 2004 Motion"). At the time it filed this motion, the City submitted the documents at issue to the Court for in camera review (hereinafter, the "In Camera Documents"). The In Camera Documents were labeled as Exhibits 1 through 14 – numbers that were keyed to the City's privilege log. See November 2004 Motion, Exhibit A (annexing, inter alia, a hand-numbered privilege log).

At the time of the November 2004 Motion, the City asserted that all these documents were either not relevant and/or subject to the deliberative process and law enforcement privileges. The court heard oral argument on the City's motion on January 31, 2005. See Transcript, filed Feb. 15, 2005 (Docket #82) ("Tr."). In an oral decision, the Court sustained the assertions of privilege as to some documents and rejected it as to others. With respect to most of the documents at issue in the instant motion (specifically, Exhibits 5 through 10 of the In Camera Documents), the Court rejected the City's assertion of the deliberative process privilege on the ground that these items did not relate to "specific decision-making on a specific issue." (Tr. 35). The Court rejected the City's assertion of the law enforcement privilege as well. (Tr. 35-36) ("[C]ase law makes it a requirement that there be some kind of . . . substantial threshold showing of specific harms. . . . [T]hat showing has not been made, [so] I am going to require its production."). The Court's ruling rejecting the City's assertion of privileges was embodied in a summary order. See Order, dated Jan. 31, 2005 (Docket #79).[1]

---

[1]The transcript is clear that the Court rejected the assertion of privilege with respect to Exhibits 5 through 10. While it is not clear the same ruling was made with respect to Exhibits 2 and 12 (portions of which are also included in plaintiffs' summary judgment papers), it is not necessary to parse this matter further. The privilege claim was obviously rejected as to Exhibit 12 since the document was ordered produced. (Tr. 41). While the transcript indicates that privilege was sustained as to Exhibit 2, see Tr. 31, plaintiffs obviously obtained a copy of the portion of Exhibit 2 that they included with their summary judgment papers. Inasmuch as the

2

Immediately following the rulings with respect to Exhibits 5 through 10, the Court raised the issue of a protective order. The Court stated:

> I am willing to have a protective order at least as an initial matter for counsel's eyes only, then to the extent that we need to go beyond that, I will put the city to the burden, if plaintiffs' counsel feels they need to use it for some purpose that's going to require showing it to others, consultants can see it obviously, but if it's needed for purposes to go beyond that, then we would have some mechanism, the city would be put to the burden on the law enforcement technique aspects of it, you can put that together specifically.

(Tr. 36).

While this paragraph is no model of clarity, what the Court contemplated was that Exhibits 5 through 10 would be turned over to the plaintiffs under a protective order that would permit only plaintiffs' attorneys to view them. The Court assumed that the parties would stipulate to such an order and submit it to the Court for approval. Once plaintiffs viewed the materials, the Court contemplated that the plaintiffs would have the opportunity to make the case that the "attorney's eyes only" restriction imposed by the protective order should be reconsidered. Thus the Court assumed that if plaintiffs' counsel needed to use the documents for some purpose relating to the litigation that required showing the document to others, the plaintiffs would be given the opportunity to submit arguments why the materials should not be subject to the "attorney's eyes only" restriction or why the materials should not be subject to a protective order at all. At the same time, the Court contemplated that the City would still have the burden of showing the necessity for a protective order and that, as part of making this showing, it could advert to such matters as the need to protect law enforcement techniques – not

---

City has not argued on the instant motion that any documents other than what has been termed the "Graham Report" (Exhibit 5 of the In Camera Documents) are privileged, the Court will treat all the documents as if they had been the subject of a ruling denying claims of privilege.

3

to reargue the privilege issue, since the claims of privilege had been denied, but merely as support for the need for a protective order.

The Court's assumption that a protective order would be agreed to by the parties and submitted to the Court was only partially realized. The parties apparently agreed on the text of such an order and the plaintiffs signed it. See Order of Confidentiality, filed Feb. 9, 2006 (Docket #123) ("Protective Order"). But the defendants' attorneys produced the materials to plaintiffs' attorneys without signing it themselves. See id. at 5.

B. The Instant Motion

The instant motion began its existence as a "Notice of Motion for an Order Striking the Graham Report from an Unexecuted, Unfiled Stipulation and Confidentiality Order," dated January 13, 2006, which plaintiffs filed under seal. The motion as originally filed raised two issues. First, plaintiffs sought to remove one of the documents produced to them – the "Graham Report" – from the scope of the Protective Order. Second, plaintiffs sought permission to file the Graham Report publicly on the ground that, because it was to form part of their planned opposition to the defendants' summary judgment motion, it was a public record and should not be sealed.

The Court held a telephone conference on February 8, 2006, during which plaintiffs' counsel stated that he intended to include in his summary judgment papers not only the Graham Report but also additional documents identified as confidential. As reflected in a written order issued on that date, the Court directed the plaintiffs to supplement their motion to unseal with respect to any such new materials and gave the City an opportunity to respond. See Order, filed Feb. 14, 2006 (Docket #124), at 1. The plaintiffs did so – sending a letter request to expand the

4

motion to include all confidential documents contained in their papers. See Letter from Daniel M. Perez, dated Feb. 17, 2006 ("February 17 Letter"), at 2. Specifically, these documents are contained in Exhibits 20 and 28 to the Declaration of Daniel M. Perez, dated Feb. 17, 2006 ("Perez Decl."), one of the documents plaintiffs filed in opposition to the defendants' motion for summary judgment (and in support of their own cross-motion).

The February 17 Letter makes clear that plaintiffs' application at this point is no longer to "strike" the Graham Report from the existing Protective Order, but rather to be permitted to file their summary judgment papers in the public record – papers that include the Graham Report and as well as other materials subject to the Protective Order. During the February 8 telephone conference, the Court had suggested to plaintiffs that they redact any portions of the documents that were not necessary to their summary judgment motion. As a result, the versions of the documents contained in Exhibits 20 and 28 to the Perez Declaration are partially redacted.[2]

The defendants responded to plaintiffs' February 17 Letter with their own letter dated February 27, 2006 ("February 27 Letter"), and plaintiffs submitted a reply letter on the same date.

## II. DISCUSSION

### A. Whether the Protective Order Governs At All

The first question before the Court is whether the Protective Order has any relevance here. As noted, the defendants did not execute it before they turned over documents to the plaintiffs – a circumstance that could suggest that it has no applicability. On the other hand,

---

[2]The Court also made provision for the public filing of a version of plaintiffs' papers that redacted all confidential material. While there is a pending dispute about the adequacy of even those redactions, that dispute is moot in light of the disposition of the instant motion.

there are several reasons to give it effect. First, the plaintiffs themselves signed it and thus it would not be unfair to have them abide by its terms. Second, the text of the Protective Order itself made specific reference to the categories of materials that the Court had ordered produced at the January 31, 2005, oral argument, thus reflecting an understanding by the parties that plaintiffs would obtain the materials pursuant to the restrictions in the Protective Order. Third, at oral argument on the November 2004 Motion, the Court specifically contemplated that documents would be produced pursuant to a "protective order," see, e.g., Tr. 36, 41. Finally, the Court ultimately signed the Protective Order, with some changes that it made sua sponte. Accordingly, the Court assumes that the Protective Order governs these documents.

### B.  Whether Plaintiffs Should Continue to Be Bound by the Protective Order's Restrictions

Case law has addressed the conditions under which documents subject to a protective order may be removed from the strictures of such an order. The Second Circuit has stated broadly that it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." AT & T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005) (quoting S.E.C. v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001)). It has further held that "[o]nce a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" Id. at 562 (quoting Martindell v. Int'l Tel. and Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979)).

Nonetheless, "[w]here a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order." TheStreet.com, 273 F.3d at 231. Here, the City has not shown that it "relied" on the Protective

6

Order for the simple reason that it has not shown that it took some action under the assumption that the materials at issue would remain subject to the Protective Order. The classic situation in which a party "relies" on a protective order is where the party creates material during the course of the litigation on the understanding that it will be kept confidential – for example, by signing a settlement document, see, e.g., TheStreet.com, 273 F.3d at 230 ("In some cases, settlement would not be possible but for the parties' reliance on a protective order."); City of Hartford v. Chase, 942 F.2d 130, 136 (2d Cir. 1991); FDIC v. Ernst & Ernst, 677 F.2d 230, 232 (2d Cir. 1982), or by giving confidential testimony, see Martindell, 594 F.2d at 296. The City, however, has not shown that it undertook any act in reliance on the materials at issue remaining confidential pursuant to the Protective Order. See generally TheStreet.com, 273 F.3d at 234 (where depositions were given prior to entry of protective order, parties could not have relied on the order).

Nor would any such reliance have been "reasonable," Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006), for two reasons. First, the Protective Order itself provides that plaintiffs may object to the designation of a document as confidential, thereby triggering an obligation by defendants to move for an order approving the designation. See Protective Order ¶ 3. Second, the Court had explicitly stated at oral argument that the plaintiffs could seek to have the Court revisit its ruling as to confidentiality when they had a reason to do so. (Tr. 36). As the Second Circuit has recognized, "some protective orders may not merit a strong presumption against modification. For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties. Indeed, in such circumstances reliance may be unreasonable." Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 n.7 (2d Cir.

7

2004) (quoting TheStreet.com, 273 F.3d at 230-31); accord Lugosch, 435 F.3d at 126 (party could not reasonably rely on confidentiality order stating that it "shall not prevent anyone from applying to the Court for relief therefrom."). Such is the case here. The conditions contemplated by the Court for revisiting the Protective Order have now occurred inasmuch as plaintiffs wish to include the Graham Report and related materials in their summary judgment papers. Accordingly, the Court will examine de novo whether the City has shown that the materials may be made confidential pursuant to Fed. R. Civ. P. 26(c).

      C.  Whether The Materials Are Protectible Under Fed. R. Civ. P. 26(c)

Under Fed. R. Civ. P. 26(c), "'the party seeking a protective order has the burden of showing that good cause exists for issuance of that order.'" Gambale, 377 F.3d at 142 (quoting In re Agent Orange Product Liability Litigation, 821 F.2d 139, 145 (2d Cir.), cert. denied, 484 U.S. 953 (1987)). Moreover,

> [i]t is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.

Agent Orange, 821 F.2d at 145 (citation omitted).

With respect to the question of whether there exists "good cause" to keep any of the materials at issue confidential, the City has submitted a declaration only with respect to the Graham Report. See Declaration of Deputy Chief Thomas Graham, dated Jan. 19, 2006 ("Second Graham Decl.") (annexed to Declaration of Mark D. Zuckerman, dated Jan. 20, 2006). To the extent the City's papers may be construed as asserting any privilege with respect to the Graham Report, that assertion is rejected. The City was required to make its arguments

8

regarding any claim of privilege to this document as part of the November 2004 Motion. The Court rejected the claim of privilege and that ruling is now the law of the case.

Nevertheless, a party can show good cause for protection of a document under Fed. R. Civ. P. 26(c) if it demonstrates a "clearly defined and serious injury" that would result from disclosure of the document. Cohen v. Metropolitan Life Ins. Co., 2003 WL 1563349, at *1 (S.D.N.Y. Mar. 26, 2003) (citing Bank of New York v. Meridien Biao Bank Tanzania, Ltd., 171 F.R.D. 135, 143-44 (S.D.N.Y. 1997)); Moore's Federal Practice § 26.104[1] (3d ed. 2005), at 26-252. The City has offered the declaration of Thomas Graham in an effort to show that specific harms will result from the release of the Graham Report without restrictions. See Second Graham Decl. Notably, this declaration was written at a time when plaintiffs proposed the release of the entire Graham Report. In their summary judgment papers, however, the Graham Report is redacted. See Ex. 20 to Perez Decl. Thus, many of the concerns that were raised with respect to the release of the entire report are no longer relevant.

Having examined the limited portions of the Graham Report that plaintiffs seek to release, it is plain that the Graham declaration does not demonstrate that there would be a "clearly defined and serious injury" that would result from release of these limited portions. Instead, the declaration merely asserts generalized and unsupported claims of harm that might result from disclosure. See Second Graham Decl. ¶ 7 ("specific harm would result as [the Graham Report's release] would materially impede the department's law enforcement responsibilities and capabilities"); accord id. ¶¶ 13, 14. Case law is clear, however, that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection, 224 F.R.D. 53, 56

9

(D. Conn. 2004) (citing cases). In addition, the Graham declaration makes various claims of lack of relevance (many of which have been obviated by the redactions) – a claim also argued in defendants' February 27 Letter. But the materials plainly come within the broad scope of Rule 26(b)(1).

In sum, because there is nothing in the City's papers that would support a finding that the City has shown a "clearly defined and serious injury" that would result from the release of the materials as redacted by plaintiffs in their opposition papers, these materials should no longer be subject to the Protective Order.

### D. Presumption of Access to Judicial Documents

It is not necessary to rest merely on the above analysis, however, and the Court does not do so. There is another critical circumstance that applies here: the fact that the documents at issue form part of the plaintiffs' papers responding to the defendants' motion for summary judgment.

As was recently re-articulated in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006), "documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Id. at 121. Lugosch notes that "summary judgment is an adjudication, and '[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" Id. (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982), cert. denied, 460 U.S. 1051 (1983) (brackets in original)). Thus, summary judgment documents "should not remain under seal absent the most compelling reasons." Id.

With respect to the common law right of access, Lugosch notes that "the danger of impairing law enforcement" may be weighed against the presumption of access. With respect to the First Amendment right of access, "closure" – in this case, sealing – is permissible where it is "essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 120 (citations and quotation marks omitted). But the City has not met its burden of showing that any countervailing circumstances apply here, for the reasons already discussed with respect to the City's failure to meet the "good cause" standard for a protective order under Rule 26(c). Rather, the City's submissions consist of nothing more than conclusory statements asserting harm. These are insufficient to demonstrate "the most compelling reasons" that would justify sealing plaintiffs' summary judgment papers.

The City argues that the materials included in plaintiffs' papers are not in fact relevant to their summary judgment motion and that therefore the presumption of access articulated in Lugosch should not apply. The Court rejects this argument. The documents at issue relate specifically to the demonstration at the World Economic Forum that is at the heart of this suit. The unredacted portions arguably relate to the police officers' intent with respect to the arrests of plaintiffs as well as plaintiffs' claims of deliberate indifference. Plaintiffs specifically refer to these materials in their Rule 56.1 statement. See Plaintiffs' Combined Local Civil Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment, dated Feb. 17, 2006 (annexed to Plaintiffs' Cross-Motion and Notice of Cross-Motion for Partial Summary Judgment, dated Feb. 17, 2006), ¶¶ 76-78, 80, 182, 252. While it is possible that the presumption of access should not

11

apply where a party appends wholly irrelevant material to its summary judgment papers, that is certainly not the case here.

Conclusion

Plaintiffs' motion to file their summary judgment papers in unsealed form is granted. Any application to seek a stay of this Order shall be presented to the undersigned in writing on or before March 14, 2006. In the absence of a further directive from the Court, plaintiffs shall file copies of their papers with the Court as required by Fed. R. Civ. P. 5(d) on or after March 16, 2006.

SO ORDERED.

DATED:    New York, New York
              March 10, 2006

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Daniel M. Perez
Kuby & Perez
119 West 23rd Street, Suite 900
New York, NY 10011

Mark Zuckerman
Pamela Lynn Mahon
Office of Corporation Counsel
100 Church Street
New York, NY 10007

apply where a party appends wholly irrelevant material to its summary judgment papers, that is certainly not the case here.

Conclusion

Plaintiffs' motion to file their summary judgment papers in unsealed form is granted. Any application to seek a stay of this Order shall be presented to the undersigned in writing on or before March 14, 2006. In the absence of a further directive from the Court, plaintiffs shall file copies of their papers with the Court as required by Fed. R. Civ. P. 5(d) on or after March 16, 2006.

SO ORDERED.

DATED: New York, New York
March 10, 2006

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Daniel M. Perez
Kuby & Perez
119 West 23rd Street, Suite 900
New York, NY 10011

Mark Zuckerman
Pamela Lynn Mahon
Office of Corporation Counsel
100 Church Street
New York, NY 10007