UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ADRIANNE ALLEN, et al.,                          :

              Plaintiffs,                  :        03 Civ. 2829 (KMW) (GWG)

          -v.-                                       :        **OPINION AND ORDER**

CITY OF NEW YORK, et al.,                     :

              Defendants.                :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**


APPEARANCES:

For Plaintiffs:

    Daniel M. Perez
    Kuby & Perez
    119 West 23rd Street, Suite 900
    New York, NY 10011

      - and -

    Scott A. Korenbaum
    111 Broadway, Suite 1305
    New York, NY 10006

For Defendants:

    Pamela Lynam Mahon
    Office of Corporation Counsel
    100 Church Street
    New York, NY 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ADRIANNE ALLEN, et al.,                                         :

                Plaintiffs,        :        03 Civ. 2829 (KMW) (GWG)

                -v.-               :        **OPINION AND ORDER**

CITY OF NEW YORK, et al.,                                       :

                Defendants.       :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      On February 3, 2002, plaintiffs were arrested following their participation in an animal rights march during the World Economic Forum ("WEF") in New York City.  They brought this action against the City of New York and various employees of the New York City Police Department ("NYPD") (collectively, the "City") asserting claims under 42 U.S.C. § 1983, including a claim that the police deliberately held them in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court.  Defendants now move in limine for an order excluding a portion of the testimony of plaintiffs' proposed expert witness, Richard Faust.  Faust analyzed arrest data and compared the time it took to process WEF arrestees with the time it took to process non-WEF arrestees.  Faust found that it took longer to process the WEF arrestees and opined that this finding "support[s] the hypothesis that the NYPD purposely took longer to process the WEF arrestees" than non-WEF arrestees.  For the reasons stated below, defendants' motion to exclude this portion of Faust's testimony is denied.

I. BACKGROUND

    A. Factual Background

From January 31 to February 4, 2002, there were demonstrations in New York City relating to meetings being held by the WEF. On January 31, February 2 and 3, the NYPD arrested some of the WEF demonstrators. No WEF demonstrators were arrested on February 1 or 4. See Affidavit of Plaintiffs' Expert Richard Faust (the "Report") (annexed as Ex. A to Notice of Motion, filed May 19, 2006 (Docket #142) ("Def. Mot.")), ¶ 7.

Faust is an "independent survey research consultant involved in the design and conduct of survey research studies and in the analysis of social science data." Report ¶ 1. He has taught and worked in the area of social sciences and data analysis, has authored articles analyzing data concerning various topics, and has testified as an expert witness in employment, housing, and education discrimination cases. See id. ¶¶ 3-6.

Faust's Report states that the amount of time from the arrest to the completion of the arraignment process, i.e., the arrest-to-arraignment time, for the sixteen plaintiffs averaged 36.17 hours. See id. ¶ 9. Faust used data provided by the NYPD to compare the arrest-to-arraignment time for WEF versus non-WEF arrestees over the 3 days during the demonstrations when arrests occurred. See id. ¶¶ 24-29. The processing time was 34.65 hours for WEF arrestees and 19.79 hours for non-WEF arrestees – in other words, processing took 75% longer for the WEF arrestees. Id. ¶ 10. Faust found that there was no relationship between the number of arrests on any given day and how long it took for the arrestees to be arraigned. Id. ¶ 13.

Faust was also able to examine certain segments of the arrest-to-arraignment process. After the arrestees were brought to the holding cells at the courthouse, referred to as "Lodge 4,"

Faust found that there was "almost no difference between WEF and non-WEF arrestees in the amount of time from their arrival at [Lodge 4] to" the time of their arraignment.  Id. ¶ 14.  The apparent import of these data is that the delay in processing WEF arrestees in comparison to non-WEF arrestees arose during the time that the WEF arrestees were in police custody rather than in court custody.  Faust concludes that in his "expert opinion, these statistical results support the hypothesis that the NYPD purposely took longer to process the WEF arrestees."  Id. ¶ 15.

> B. The Instant Motion

Defendants announce broadly that they move to "to preclude the report and testimony of . . . Richard Faust."  See Def. Mot.; Declaration of Pamela Lynam Mahon, dated Nov. 22, 2005 (annexed to Def. Mot.), ¶ 1; Defendants' Memorandum of Law in Support of Their Daubert Motion, filed May 19, 2006 (Docket #143) ("Def. Mem.").  But their memorandum of law actually addresses only a single phrase of the Faust Report.  The phrase, as stated by the City, is Faust's purported contention that the NYPD "purposely took longer to process the WEF arrestees."  See Def. Mem. at 4, 8.  In fact, Faust does not make this contention.  What he states is that certain "statistical results support the hypothesis that the NYPD purposely took longer to process the WEF arrestees."  Report ¶ 15 (emphasis added).  Thus, the City's attorneys have elided critical words from the Report resulting in an argument that ignores what Faust actually said.

We now turn to whether the sentence actually attested to by Faust is subject to preclusion pursuant to Rule 702 of the Federal Rules of Evidence and case law regarding the admission of expert testimony.  See, e.g., Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).

II.  APPLICABLE LEGAL PRINCIPLES

      A.  Motion in Limine Standard

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted); accord Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). "A motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing Fed. R. Evid. 104(a)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." Id. (citing Baxter Diagnostics, Inc. v. Novatek Med., Inc., 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998)); accord SEC v. U.S. Envtl., Inc., 2002 WL 31323832, at *2 (S.D.N.Y. Oct. 16, 2002). A district court's in limine ruling "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." Luce v. United States, 469 U.S. 38, 41 (1984); accord U.S. Envtl., 2002 WL 31323832, at *2.

      B.  Admission of Expert Testimony

      Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

>   reliable principles and methods, and (3) the witness has applied the principles
>   and methods reliably to the facts of the case.

The Rule 702 standard incorporates the principles enunciated in Daubert, 509 U.S. at 589, 597, in which the Supreme Court held that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," and in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999), in which the Supreme Court held that Daubert's general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge," id. at 141(citing Fed. R. Evid. 702).

"One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting Fed. R. Evid. 702); accord Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005); In re Initial Pub. Offering Sec. Litig., 174 F. Supp. 2d 61, 68 (S.D.N.Y. 2001) ("As Rule 702's plain language shows, the opinion of an expert witness is only admissible if it (1) assists the trier of fact in (2) understanding the evidence or determining a disputed fact.") (emphasis in original). In deciding whether expert testimony will be helpful to the factfinder, the Court must determine whether the testimony "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (internal quotation marks omitted) (quoting United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)); accord Nimely, 414 F.3d at 397; United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir.), cert. denied, 502 U.S. 813 (1991). "When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision,

but rather attempts to substitute the expert's judgment for the jury's." Duncan, 42 F.3d at 101 (emphasis omitted).

Fed. R. Evid. 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). Nonetheless, while an expert "may opine on an issue of fact within the jury's province," an expert "may not give testimony stating ultimate legal conclusions based on those facts." Bilzerian, 926 F.2d at 1294; accord Duncan, 42 F.3d at 101 (the Second Circuit "requires the exclusion of testimony which states a legal conclusion"). In addition, expert testimony is inadmissible when it addresses "lay matters which a jury is capable of understanding and deciding without the expert's help." Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989) (citing cases). Moreover, as with all testimony, the expert's testimony must be relevant under Fed. R. Evid. 401, see, e.g., Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002), and may be excluded under Fed. R. Evid. 403 where its probative value is substantially outweighed by the danger of unfair prejudice and other factors. See, e.g., Nimely, 414 F.3d at 397.

## III. DISCUSSION

As noted, the City's brief does not challenge the substance of Faust's statistical analysis but rather challenges only one aspect of Faust's proposed testimony.[1] The City's first contention

---

[1] Defendants briefly question Faust's qualifications because his "survey research experience do[es] not include any experience with arrest to arraignment processing." Def. Reply Mem. at 4 (emphasis in original). Because this argument was made for the first time in a reply brief, we do not consider it. See, e.g., Playboy Enters., Inc. v. Dumas, 960 F.Supp. 710, 720 n.7 (S.D.N.Y. 1997) (citing cases) . In any event, the argument is meritless because the City does not contest that Faust is qualified to give opinions regarding the results of a statistical analysis of data. The City has given no reason why it is necessary that he have experience in the specific

is that Faust's opinion "contains findings of fact that invade the province of the Court and the jury." Def. Mem. at 4.  The City reads Faust's use of the word "purposely" as an illegitimate attempt to supplant the plaintiff's burden to prove, as the City puts it (without citation), that there was "a deliberate choice by defendants" to commit a constitutional violation.  Def. Mem. at 4.[2] This is not a case, however, where "the witness repeatedly tracked the exact language of the statutes and regulations which the defendant had allegedly violated and used judicially defined terms."  Duncan, 42 F.3d at 101 (citation omitted).  Rather, the question of whether an individual acted "deliberate[ly]" is a factual one.  See, e.g, United States v. Awadallah, 349 F.3d 42, 65 (2d Cir. 2003) ("whether a person acted deliberately . . . is a factual question of intent") (citation omitted).  An expert may properly give evidence stating a factual conclusion even if it "embraces an ultimate issue to be decided by the jury."  Bilzerian, 926 F.2d at 1294; accord Fed. R. Evid. 704(a).  Thus, putting aside the fact that Faust does not in fact opine that the defendants acted "purposely," the City's contention on this point is meritless.

The City also argues that Faust's conclusion on the arrest-to-arraignment time fails to "control[] for potential explanatory variables." Def. Mem. at 8.  The City argues that

> Faust [did not] consider whether the reason it took longer to process WEF arrestees was due to their failure to cooperate, such as by refusing to be fingerprinted or arraigned.  Faust does not analyze or discuss if the number of court parts that were available for arraignments during the WEF accounted for the difference in the arrest to arraignment time for WEF arrestees.  Faust does not

---

process that is the subject of that data analysis.

[2]The City presumably intends to refer to elements required to show municipal liability for constitutional violations under Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).  See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

      opine on what effect the day of the week may have had on the processing of WEF arrestees.

Id.

      Had Faust in fact opined simply that the NYPD purposely took longer to process the WEF arrestees, the City's argument might have some substance since Faust's Report does not account for all potential explanations for the delay in arraignments. In some circumstances, an expert's report may be barred where it fails to examine other causes that might have potentially led to a claimed statistical result. See, e.g., Hollander v. Am. Cynamid Co., 172 F.3d 192, 203 (2d Cir. 1998); Bonton v. City of New York, 2004 WL 2453603, at *3-*4 (S.D.N.Y. Nov. 3, 2004). But, as noted, Faust merely states that the data "support[s] the hypothesis" that the defendants acted purposely – a statement that even the City has not argued is incorrect.[3]

      Had the City quoted Faust's conclusion in full, it might have argued that Faust's contention that the data "supports the hypothesis" of purposeful action is too inconclusive to pass the test of relevance under Fed. R. Evid. 401 or should be barred under Fed. R. Evid. 403. Courts have not always permitted expert testimony that factual matters are "consistent with" a

---

[3]The City has wisely chosen not to try to use this argument to preclude the remainder of the Report – that is, the data showing the differences in arrest-to-arraignment times for WEF arrestees vs. non-WEF arrestees. After all, an expert's "data and testimony need not prove [a party's] case by themselves; they must merely constitute one piece of the puzzle that [the party] endeavor[s] to assemble before the jury." City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 564-565 (11th Cir. 1998); see also United States v. Allen, 390 F.3d 944, 949 (7th Cir. 2004) ("expert need not have an opinion on the ultimate question to be resolved" to satisfy the relevance requirement) (citations and internal quotation marks omitted). Thus, at trial plaintiffs could use evidence from other sources to show why potentially explanatory variables do not account for the increased detention time for WEF arrestees.

particular hypothesis – a formulation roughly equivalent to what Faust states here.  Compare United States v. Charley, 189 F.3d 1251, 1264 (10th Cir. 1999) (admitting testimony that alleged victim suffers from symptoms "consistent with" sexual abuse); with Kolesar v. United Agri Prods., Inc., 412 F. Supp. 2d 686, 698 (W.D. Mich. 2006) (testimony that plaintiff's reported symptoms were "consistent with" possible consequences of metam sodium exposure not admissible).  It is not necessary to consider this point, however, inasmuch as the City does not make it.

Conclusion

      For the foregoing reasons, defendants' motion in limine (Docket #142) is denied.

SO ORDERED.

Dated:  December  22, 2006
       New York, New York

                                                                                                  _____
                                                         GABRIEL W. GORENSTEIN
                                                         United States Magistrate Judge

Copies sent to:

Daniel M. Perez
Kuby & Perez
119 West 23rd Street, Suite 900
New York, NY 10011

Pamela Lynam Mahon
Office of Corporation Counsel
100 Church Street
New York, NY 10007

particular hypothesis – a formulation roughly equivalent to what Faust states here.  Compare United States v. Charley, 189 F.3d 1251, 1264 (10th Cir. 1999) (admitting testimony that alleged victim suffers from symptoms "consistent with" sexual abuse); with Kolesar v. United Agri Prods., Inc., 412 F. Supp. 2d 686, 698 (W.D. Mich. 2006) (testimony that plaintiff's reported symptoms were "consistent with" possible consequences of metam sodium exposure not admissible).  It is not necessary to consider this point, however, inasmuch as the City does not make it.

Conclusion

For the foregoing reasons, defendants' motion in limine (Docket #142) is denied.

SO ORDERED.

Dated: December 22, 2006
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Daniel M. Perez
Kuby & Perez
119 West 23rd Street, Suite 900
New York, NY 10011

Pamela Lynam Mahon
Office of Corporation Counsel
100 Church Street
New York, NY 10007

9